IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KRISA NEUMANN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. 1:04cv928 |
| | ) |
| PRUDENTIAL INSURANCE | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The question presented in this already-decided ERISA[1] action is whether the published opinion and order granting plaintiff judgment on the administrative record should be vacated to facilitate the parties' settlement on appeal. More generally, the question is whether vacatur of a published final decision is warranted as an aid to settlement where, as here, the opinion decided a case that was fully litigated, briefed, and argued.

**I.**

A brief summary of the pertinent facts is warranted to frame the vacatur question presented.[2] Krisa Neumann ("Neumann"), a former Freddie Mac employee, participated in a long term disability ("LTD") insurance plan ("the Plan") through her employer. Prudential Insurance Company of America ("Prudential") served both as the Plan administrator and as the

---

[1]Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. § 1001 *et seq.*

[2]A more complete treatment of the facts may be found in the earlier published opinion. *See Neumann v. Prudential Ins. Co. of Am.*, 367 F.Supp.2d 969 (E.D. Va. 2005).

1

Plan insurer.

In 1998, Neumann was diagnosed with fibromyalgia and inactive autoimmune disease by her doctor, Thomas R. Cupps, M.D., a board-certified internist specializing in rheumatology. In reaching his diagnosis, Dr. Cupps relied on (i) plaintiff's self-described symptoms; (ii) his examinations of her; and (iii) several laboratory tests he performed. On August 6, 1999, plaintiff applied for LTD benefits under the Plan. In support of her application, Neumann provided additional evidence tending to show she was totally disabled within the meaning of the Plan,[3] including letters to this effect from Dr. Cupps, Dr. Les Gavora, M.D., Neumann's primary care physician and a board-certified internist, and Leonard G. Pearlman, a consultant in rehabilitative psychology and a vocational expert with experience in work-related disabilities. Cupps, Gavora, and Pearlman each examined plaintiff extensively. Neumann's application for LTD benefits ultimately was approved. Soon thereafter, however, Prudential terminated Neumann's LTD benefits effective September 11, 2001 based on a subsequent review of her file. Prudential based this termination decision on the advice of two in-house physicians, Dr. Marcia Scott, M.D., and Dr. Bob McBride, M.D., neither of whom examined Neumann personally. Drs. Scott and

---

[3]The Plan states in pertinent part that:
Total Disability exists when Prudential determines that all of these conditions are met:
(1) Due to Sickness or accidental Injury, both of these are true:
(a) You are unable to perform, for wage or profit, the material and substantial duties of your occupation.
(b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or profit, the material and substantial duties of any job for which you are reasonably fitted by your education, training or experience. The Initial Duration is shown in the Schedule of Benefits.
(2) You are not working at any job for wage or profit.

McBride both recommended revoking Neumann's LTD benefits because, as they saw it, the evidence of her disability was wholly subjective in nature. After Prudential denied each of Neumann's three appeals seeking reinstatement of her LTD benefits, Neumann sued Prudential here to recover LTD benefits she claimed Prudential had wrongfully denied her.

The parties filed cross motions for summary judgment. By Memorandum Opinion dated April 28, 2005, judgment issued in plaintiff's favor. That Memorandum Opinion held, *inter alia*, as follows:

> (i) that a plan fails to reflect the requisite clear intention to confer discretion on an administrator in making benefits decisions where, as here, the plan provides that total disability exists when the plan administrator "determines" that certain conditions are met. Accordingly, because the Plan's plain language failed to reflect the requisite clear intention to confer upon Prudential any discretion to interpret or administer the Plan, a denial of benefits is reviewed *de novo*;[4]
>
> (ii) that because there were disputed issues of fact, the appropriate procedure to resolve the parties' dispute was not summary judgment, but rather a bench trial based only on the administrative record pursuant to Rule 52, Fed. R. Civ. P.;[5]
>
> (iii) that although Prudential, as the plan administrator, was not required to accord any special weight to a patient's treating physicians, Prudential must credit the opinion of an examining physician where, as here, that physician does a better job interviewing, examining, and evaluating the patient;
>
> (iv) that genuinely independent medical examinations, although not required, may be especially significant in a review of denial of LTD ERISA benefits where, as here, the plan administrator operates under a conflict of interest and rejects a treating doctor's opinion; and

---

[4] Although the Memorandum Opinion stated that the Plan unambiguously did not grant Prudential discretion with respect to benefits eligibility determinations, the Opinion alternatively held that where, as here, the Plan language is ambiguous, the ambiguity must be construed in favor of the beneficiary, Neumann, and against the drafter, Prudential.

[5] Pursuant to Rule 52, Fed. R. Civ. P., the parties were free to make additional submissions to supplement the administrative record, but they chose not to do so.

(v) that where, as here, there was some objective evidence of an ERISA participant's disability in the record, her subjective complaints, if reliable, should not be discounted out of hand by the administrator, particularly where, as here, there are no objective laboratory tests for the presence or severity of the participant's disabling disease.

On June 20, 2005, final judgment was entered in favor of plaintiff in the amount of $92,817.63, plus costs and pre-judgement interest pursuant to 28 U.S.C. § 1961. On July 22, 2005, Prudential filed a notice of appeal. That appeal is currently pending.

On October 14, 2005, pursuant to Rule 60(b)(6), Fed. R. Civ. P., the parties jointly sought vacatur of the April 28 Memorandum Opinion and Final Judgment Order of June 20.[6] Specifically, the parties stated that they had reached a settlement conditioned on this vacatur of the Memorandum Opinion and Final Judgment Order. The question, then, is whether the parties' post-judgment settlement justifies vacatur.

## II.

Rule 60, Fed. R. Civ. P., governs whether a party may obtain relief from a final judgment; it does so by striking a proper balance between the competing virtues of finality of litigation outcomes with the justice that may only come from revisiting those outcomes. *See* Wright, Miller, and Kane, Federal Practice and Procedure: § 2851 (2d ed. 1995). Thus, Rules 60(b)(1)-(5) specifically enumerate five narrow circumstances in which relief from judgment may be appropriate. By contrast, Rule 60(b)(6), Fed. R. Civ. P., is an open-ended provision; it permits courts to reopen a final judgment for "any other reason justifying relief from the operation of the judgment." *Id.* In this circuit and elsewhere, courts have interpreted Rule 60(b)(6) narrowly,

---

[6]In their joint motion, the parties sought only vacatur of the Memorandum Opinion. Because the reasons underlying the Final Judgment Order and the Memorandum Opinion are the same, the parties' motion will be treated as a motion to vacate both.

granting relief only under "extraordinary circumstances."[7]  And, the decision to grant or deny a Rule 60(b)(6) motion, as with all Rule 60 motions, is committed to the court's sound discretion.[8]

Although the parties cited no pertinent authority in their joint motion, there is, in fact, ample apposite authority on the question presented here.  To begin, the Supreme Court weighed in on this general subject in *U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, 513 U.S. 18 (1994).  There, the parties to a bankruptcy appeal settled and then requested vacatur.  On these facts, the Supreme Court held that post-judgment settlement did not constitute extraordinary circumstances meriting vacatur.  Although the parties in *Bancorp*, unlike the parties here, settled before seeking vacatur, this distinction is not material; it does not affect the basic principle that post-judgment vacatur should issue only in extraordinary circumstances.  Other circuits have followed suit, interpreting *Bancorp* to establish a general presumption against vacatur.[9]  More to point, it is settled in this circuit, consistent with *Bancorp*, that where, as here, a case has been fully briefed, argued, and decided by written opinion, there is a general

---

[7]*See, e.g.*, *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 393 (1993); *Reid v. Angelone*, 369 F.3d 363, 370 (4th Cir. 2004); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 n.2 (4th Cir. 2000).

[8] *See, e.g.*, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 235 (1995); *Konkel v. Bob Evans Farms Inc.*, 165 F.3d 275, 282 (4th Cir. 1999) (district court's decision on Rule 60(b)(6) motion reviewed for abuse of discretion).

[9]*See, e.g.*, *Aqua Marine Supply v. AIM Machining, Inc.*, 247 F.3d 1216, 1221 (6th Cir. 2001) (noting the "general rule against vacatur"); *Khodara Environmental, Inc. ex rel. Eagle Environmental L.P. v. Beckman*, 237 F.3d 186, 195 (3d Cir. 2001) (same).  Although the Second Circuit at one time adopted the opposite presumption in *Nestle Co. v. Chester's Market, Inc.*, 756 F.2d 280 (2d Cir. 1985), it has since repudiated *Nestle* and its progeny.  *Compare Nestle Co. v. Chester's Market, Inc.*, 756 F.2d 280 (2d Cir. 1985) (holding that district court abused its discretion in failing to grant parties' motion for post-judgment vacatur following settlement) *with Microsoft Corp. v. Bristol Technology, Inc.*, 250 F.3d 152, 154 (2d Cir. 2001) (recognizing *Nestle* is no longer good law on the issue of post-judgment vacatur).

presumption against vacatur. *See Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000).

In an effort to overcome this presumption, the parties here offer only three reasons, the first two of which, on close scrutiny, are essentially the same. First, the parties note that vacatur is warranted because their settlement is conditioned on it. Second, defendant seeks vacatur so that it will not have to contend with the opinion's holdings as governing its future conduct or as legal precedent in future benefits disputes. This, of course, is simply the reason the settlement is conditioned on vacatur and hence is merely a restatement of the first reason. In any event, whether the same or distinct, these reasons do not, either individually or collectively, amount to exceptional circumstances warranting vacatur; they fall far short of overcoming the general presumption against vacatur. As the Supreme Court has stated,

> It should be clear from our discussion ... that exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur–which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations [against post-judgment vacatur].

*U.S. Bancorp Mortgage Company v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994).

The third proffered reason is a supposed conservation of judicial resources. This reason is illusory and indeed post-judgment vacatur, in general, is likely to be counterproductive in this regard. Of course, post-judgment vacatur may facilitate settlement in some cases, with attendant economies for the appellate courts. Yet, it is far from clear that post-judgment vacatur, if granted with any regularity, would conserve judicial resources overall. To the contrary, were post-judgment vacatur readily available, many litigants might thereby be encouraged to forego settlement early in the litigation process, hoping either to prevail at trial or, failing that, to

6

bargain away any adverse decision with a settlement conditioned on vacatur. In this way, settlement conditioned on post-judgment vacatur, in sharp contrast to prejudgment settlement, hardly results in conserving judicial resources.

There is a more fundamental policy point relating to the function of courts that supports the presumption against post-judgment vacatur. To be sure, settlement by the parties is a desideratum of any dispute resolution system, including federal litigation and the result reached here should not be construed to the contrary. Yet importantly, it is not always the sole or even dominant desideratum. Other goals arguably become more important in the post-judgment phase of litigation. This is so because federal courts are institutions whose power and authority derive not from mere private agreement, but from public law. In other words, federal courts exist not just to bring peace between warring parties, but more importantly to give expression and force to the rules and principles (and hence values) embodied in the governing law, including statutes and judicial precedent.[10] Put differently, where, as here, the parties have litigated their dispute in the trial court and a decision and judgment have issued elucidating and applying the governing law to resolve the parties' dispute, courts play an important role that goes well beyond merely resolving private disputes. Accordingly, the presumption against vacatur is well founded; it stands as a safeguard against strategic manipulation of the judicial system for private gain at public expense.

In sum, the parties have adduced no sufficient reason to overcome the presumption against post-judgment vacatur. The only interest the parties cite is Prudential's *private* interest in

---

[10] As the Supreme Court put it in *Bancorp*, judicial precedents "are presumptively correct and valuable to the legal community as a whole." *Bancorp*, 513 U.S. at 26.

eliminating the precedent established by the April 28 Opinion. While Prudential's desire to eliminate any precedential or persuasive effect the Opinion may have is understandable, the appropriate means for doing so is the appeal. *See, e.g.*, *Latham v. Wells Fargo Bank, N.A.*, 987 F.2d 1199, 1203 (5th Cir. 1993) (noting that a motion for relief from judgment pursuant to Rule 60(b) is not a substitute for appeal). If the Opinion is wrong (in a positivist sense), vacatur will follow; if correct, it should stand. Of course, Prudential may choose to settle with plaintiff without vacatur and thereby conserve legal fees and judicial resources. In this event, it would also be free to change the Plan language to grant Prudential unambiguous discretion in making benefits decisions, thereby eliminating the Opinion's relevance.

      For the reasons stated herein, the parties' motion for relief from judgment is denied. An appropriate order will issue.

Alexandria, Virginia  
November 14, 2005

_____/s/_____  
T. S. Ellis, III  
United States District Judge